This was an action on the case against the defendant, Alexander Murchison, as the owner of a raft of timber, to recover damages for an injury done by said raft to a toll-bridge, the property of the plaintiff, William S. Ashe. The declaration stated that the plaintiff was the owner of a certain bridge over the Northeastern branch of the Cape Fear River, about a mile and a half above the town of Wilmington, and entitled to collect toll from passengers crossing the same; and that the defendant being the owner of a large raft of lumber, carelessly, improperly and negligently permitted his said raft to strike against the said bridge belonging to the plaintiff, so as to break down and destroy a large part thereof, etc. Plea, not guilty.
John Mills, a witness called by the plaintiff, testified that on .. November, 1845, about a little before sunrise, he was at the bridge of the plaintiff, when he observed a very large raft of lumber within twenty feet of the bridge, and coming against it on the floodtide. No person was on the raft, and it struck the bridge and carried away sixty-eight feet of it. On one end of the raft there was a piece of grapevine, which looked (216) as though it had been cut. He believed there was a small piece of rope at the other end of the raft, but as to this he was not positive. He further testified that the bridge was the property of the plaintiff, he being then in possession of it and collecting toll from passengers.
M. Lewis was then called as a witness for the plaintiff. He testified that during the day, on the morning of which the raft had struck the plaintiff's bridge, as testified to by the first witness, or during the next day, he was at the bridge, when one H. McKeller (who it was admitted was the agent of the defendant) came to the bridge for the purpose of securing the raft and carrying it to Wilmington; that, while at the bridge and on the raft, he (McKeller) said that the raft was the property of the defendant, who resided in the county of Cumberland. He *Page 163 
further testified that the raft was one of the largest he ever saw; and that the bridge was the property of the plaintiff, who had been in possession of it and receiving toll from passengers over it for many years. In answer to questions by the defendant's counsel, he stated that the stream over which the bridge was built was a navigable stream, and that the bridge had been broken three or four times by rafts or flats.
The plaintiff then introduced one P. Tilley, who testified that he was at the bridge with the plaintiff while the raft spoken of was lying against it, and McKeller, defendant's agent, was on the raft; that some conversation ensued between the plaintiff and said McKeller, in which McKeller remarked, "he did not care a damn if the raft had broken down the whole of the bridge." This testimony was objected to by the defendant, but admitted by the court.
Other witnesses were examined, who testified as to the extent of the damages done to the bridge.
The defendant then offered H. McKeller as a witness. The examination of the witness was objected to by the plaintiff, for the reason that the witness, being the admitted (217) agent of the defendant, was responsible over to the defendant for the damages which the plaintiff might recover in this suit, and that the witness was therefore interested in defeating the recovery of the plaintiff. The court refused to permit the witness to be examined. The defendant's attorney of record offered to release or discharge the witness from any liability which he might be under to the defendant; but the court was of opinion that the attorney of record could not execute such a release for the defendant. The defendant then offered to examine the witness on his voire dire, to show the extent of his agency and that he would not be liable over to the defendant. This was also refused by the court.
The defendant insisted, and so asked the court to charge the jury:
1. That if the plaintiff's bridge was erected over a navigable stream, used by the public in conveying their produce to market, he must show a right to such bridge by grant or otherwise.
2. That if the plaintiff's bridge, erected over a navigable stream, had been built in a weak and insecure manner, so as to be liable to be broken down by ordinary rafts, it was the plaintiff's own folly, and he could not recover.
3. That if the injury resulted from pure accident, and without any negligence on the part of the defendant, then it was a case of loss without injury, and the plaintiff could not recover.
The court charged the jury upon the first point: That for *Page 164 
the purposes of this action, so far as the plaintiff's title to the bridge was involved, it was sufficient for the plaintiff to show that he was in the peaceable possession of the bridge and receiving the tolls.
Upon the second point he charged: That if the bridge was weak, it only affected the measure of damages, but not the plaintiff's right to recover.
(218) And upon the third point: That to entitle the plaintiff to recover, he must satisfy the jury that there was negligence on the part of the defendant, either by himself or his agent — defendant being bound to use ordinary care and diligence in the management of his raft; that the testimony made out a prima facie case of negligence in the defendant in permitting his raft to drift at large on the river without any person in charge of it, whereby the plaintiff was injured, and it was for them to say whether the defendant had explained this prima facie
evidence of negligence on his part by showing that the condition and situation of the raft was the result of accident, which could not have been avoided by ordinary care on his part. And the whole circumstances were submitted to the jury.
The jury returned a verdict in favor of the plaintiff. Whereupon a rule upon the plaintiff was granted that he should show cause why a new trial should not be granted upon the ground of misdirection and the rejection of proper evidence; and upon argument the rule was discharged and the judgment given according to the verdict. The defendant prayed an appeal, which was allowed.
Upon the question whether H. McKeller, a witness called for the defendant, was competent to testify for him under the circumstances in which he was offered, we differ from the judge who presided at the trial. The case states that it was admitted that the witness was agent for the defendant; but whether he was a general or special agent, whether he was an agent only to carry the raft of timber to Wilmington or only an agent to receive it there and sell it for the benefit of his principal, is not shown. An agent, as such, is not necessarily incompetent to testify for his principal. He can be excluded only on the ground of interest. If an action be brought against his principal for an injury sustained by reason of the agent's negligence or misconduct, then he is directly interested in the event of the suit, because he is responsible over *Page 165 
to his principal for the amount of the damages recovered against him. 1 Stark, on Ev., 112, 113. Now, in this case there was no evidence that the injury to the plaintiff's bridge was caused by the negligence or misconduct of the witness. It does not appear that he had charge of the raft at the time when it was carried by the tide against the bridge. From all that is shown, the raft might then have been under the charge of the defendant himself or of another agent. The first that we hear of McKeller is the day after the injury, when he went to the bridge for the purpose of securing the raft and carrying (220) it to Wilmington. He then admitted his agency, but when it was assumed and what was the nature and extent of it was not stated. It seems to us that the facts and circumstances making out a prima facie case of responsibility to his principal should have been shown before the witness was excluded; and if such had been shown, then the defendant ought to have been permitted to examine him on his voire dire, to explain his real situation. 1 Stark. on Ev., 123.
For the improper exclusion of the testimony of the witness McKeller a new trial must be granted; and as the case may then assume a very different aspect from that which it now presents, it is unnecessary for us to decide the other questions presented in the record. The judgment is reversed and a new trial granted.
PER CURIAM. Judgment reversed and new trial granted.
(221)